UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 17-61-DLB

RYAN R. POMERLEAU                                                              PETITIONER

VS.                              **MEMORANDUM OPINION
                                  AND ORDER**

J. RAY ORMOND, WARDEN                                                       RESPONDENT

\* \* \* \* \* \* \* \* \* \* \*

## I.     Introduction

Federal inmate, Ryan Pomerleau, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the imposition of prison disciplinary sanctions. (Doc. # 1). This matter is before the Court to conduct an initial screening of Pomerleau's petition. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).

## II.    Factual and Procedural History

On the evening of February 25, 2016, Pomerleau and his cellmate Wilson were found unresponsive on the floor of their cell. Pomerleau was having tremors or seizures and was unresponsive to stimulus. Wilson was similarly unresponsive and was covered in his own vomit. Once Pomerleau's tremors ceased, he remained disoriented, and then became hostile and physically combative with staff once they tried to restrain him. (Doc. # 1-1 at 12-13).

1

As Pomerleau and Wilson were being escorted to the prison's medical center, Wilson stated to an officer that both he and Pomerleau had taken K2 Spice, a synthetic cannabinoid. Medical staff then administered Narcan (Naloxone) to both inmates, which had the effect for both inmates of promptly reversing the effects of the narcotics by restoring breathing to a more normal rate and increasing alertness. This change in condition is considered diagnostic of an opioid overdose.[1] In addition, Pomerleau and Wilson both displayed various withdrawal symptoms such as shivering, increased heart rate, and vomiting. (Doc. # 1-1 at 2-3).

The inmates were then transported to an outside hospital, where immediate treatment for substance abuse was provided and laboratory tests performed. Because of the seriousness of the offense, the prison's Special Investigative Services officer conducted a thorough investigation. During this investigation, Wilson told the SIS investigator that Pomerleau had told him that he had something for both of them to smoke, and then they smoked it in his cell. (Doc. # 1-1 at 4). On April 4, 2016, an Incident Report was issued charging Pomerleau with Use of Any Narcotic Not Prescribed by Medical Staff, a Code 112 offense, and Assaulting Any Person (Attempted), a Code 224A offense. (Doc. # 1-1 at 12-14).

A hearing was held on April 13, 2016 before a Disciplinary Hearing Officer ("DHO"). Pomerleau had requested and received assistance from a staff representative at the hearing, but he did not present any documentary evidence. Pomerleau called Wilson as

---

[1] K2 and Spice, initially brand names for specific designer synthetic cannabinoids, are now used generically to refer to any synthetic cannabinoid. These drugs are often found laced with various other chemical compounds or narcotics, including synthetic opioids.

2

a witness, but he testified only that he passed out and did not remember anything. For his part, Pomerleau would neither admit nor deny the charge, stating only that he didn't remember anything.

In assessing the validity of the charges, the DHO considered written reports made by nine separate officers and medical staff, the SIS investigator's report, medical records and lab reports from the outside medical facility, and a clinical pharmacology report. In finding Pomerleau guilty of using unauthorized narcotics, the DHO noted Wilson's admission that both of them had smoked K2 Spice; the officers' observations of Pomerleau's mental and physical condition upon discovery; and the prompt remission of symptoms upon the administration of Narcan. He further noted that the toxicology reports indicated that foreign synthetic substances in excess of 200 mcg/ml supported the conclusion that Pomerleau had ingested K2 Spice, particularly considering that a known (and intentional) effect of Narcan is to considerably reduce the detectable levels of such compounds within 30 to 80 minutes of administration. The DHO found Pomerleau guilty of the offense, and imposed various sanctions including the forfeiture or disallowance of 95 days good conduct time. The DHO dismissed the assault charge, concluding that Pomerleau's diminished mental capacity at the time rendered him not responsible for his actions when he was combative with officers. (Doc # 1-1 at 1-6; 28).

In his petition, Pomerleau contends that the DHO improperly accepted Wilson's confession that they both smoked the K2 Spice over laboratory test results, which he contends showed that he did not use narcotics. (Doc. # 1 at 6-7).

III. **Discussion**

When a prison disciplinary board takes action that results in the loss of good time credits in which the prisoner has a vested liberty interest, the Due Process Clause requires prison officials to observe certain protections for the prisoner. Specifically, the prisoner is entitled to advance notice of the charges, the opportunity to present evidence in his or her defense, whether through live testimony or documents, and a written decision explaining the grounds used to determine guilt or innocence of the offense. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). Further, the findings used as a basis to revoke good time credits must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Selby v. Caruso*, 734 F. 3d 554, 559 (6th Cir. 2013).

Pomerleau's petition challenges the sufficiency of the evidence used to convict him of the disciplinary offense. This Court's review of whether there was "some evidence" to support the DHO's factual determinations is extraordinarily deferential: "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added).

Here, Pomerleau was discovered in his cell in an unresponsive state, his cellmate readily confessed that he and Pomerleau had smoked K2 Spice, and he responded promptly and favorably to the administration of Narcan, an outcome considered diagnostic of opioid overdose. (Doc. # 1-1 at 2). The DHO also noted that the laboratory report still showed elevated levels of two synthetic drugs in his system hours after he was

discovered. Finally, the DHO noted that the administration of Narcan, a drug used to save persons suffering from opioid overdose from death or serious physical injury, acts to reduce the detectable levels of the very unauthorized or illegal drugs it counteracts, thus explaining why the laboratory test results did not show clinically significant levels of some, although not all, of the compounds found in K2 Spice. (Doc. # 1-1 at 4-5). In sum, the DHO had ample evidence—observed, testimonial, and clinical—upon which to conclude that Pomerleau had used illegal narcotics in his cell. The disciplinary conviction was therefore supported by some evidence and comports with the requirements of due process.

### IV. Conclusion

Accordingly, it is **ORDERED** as follows:

(1) Pomerleau's petition for a writ of habeas corpus (Doc. # 1) is **DENIED**.

(2) The Court will enter a judgment contemporaneously with this order.

(3) This matter is **DISMISSED** and **STRICKEN** from the docket.

This 22nd day of September, 2017.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\ProSe\Pomerleau 17-61-DLB Memorandum RBW.docx